1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANGIE LOREN RODRIGUEZ
RODRIGUEZ,

                 Petitioner,

    v.

POLLY KAISER, Acting Field Office
Director of the San Francisco Immigration
and Customs Enforcement Office; TODD
M. LYONS, Acting Director of United
States Immigration and Customs
Enforcement; KRISTI NOEM, Secretary of
the United States Department of Homeland
Security; PAMELA BONDI, Attorney
General of the United States; MINGA
WOFFORD, Mesa Verde ICE Processing
Center Facility Administrator,

                 Respondents.

No.  1:25-cv-01111-KES-SAB (HC)

ORDER GRANTING MOTION FOR
TEMPORARY RESTRAINING ORDER

Doc. 4

Petitioner Angie Loren Rodriguez Rodriguez is a noncitizen in the custody of Immigration and Customs Enforcement ("ICE") agents.  Like many others recently, she was re-detained as she reported for a regularly scheduled check-in with ICE agents, even though immigration officials had previously released her from detention after determining that she was not a flight risk or danger to the community.  This Court has enjoined the government from re-detaining noncitizens under these circumstances without a pre-deprivation bond hearing.  *See, e.g.*, *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679 (E.D. Cal. July 11, 2025).

After ICE placed her in a detention center, petitioner began to feel ill; subsequent testing revealed that petitioner was pregnant.  The verified petition asserts that petitioner was not provided with adequate food, medical care, or pre-natal educational materials while detained.  On

1

1  the date she initiated this action, she suffered a miscarriage.

2          On September 2, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a

3  motion for temporary restraining order, Doc. 2.  Petitioner seeks an order that (1) immediately

4  releases her from custody without any electronic monitoring; (2) enjoins respondents from re-

5  detaining her unless they provide 10 days' notice and demonstrate at a pre-deprivation bond

6  hearing, by clear and convincing evidence, that petitioner is a flight risk or danger to the

7  community such that her physical custody is legally justified; and (3) prohibits the government

8  from transferring petitioner out of this district and/or removing her from the country until these

9  habeas proceedings have concluded.  *Id.* at 13.  For the reasons set forth below, the Court grants

10  petitioner's motion for temporary restraining order.

11  **I.    Background**[1]

12          Petitioner fled Colombia after facing violent persecution and arrived in the United States

13  on December 27, 2022, hoping to seek asylum.  Doc. 1 at ¶¶ 2, 10, 56.  She turned herself in to

14  immigration officials near the southern border, and the immigration officials detained her.  *Id.*

15  ¶ 56.  The next day, the immigration officials served her with a notice to appear in immigration

16  court for removal proceedings, then released her on her own recognizance pending those removal

17  proceedings.  *Id.* ¶ 57.  The regulations that authorize immigration authorities to release a

18  noncitizen require that the noncitizen "demonstrate to the satisfaction of the officer that such

19  release would not pose a danger to property or persons" and that the noncitizen is "likely to

20  appear for any future proceeding."  8 C.F.R. § 1236.1(c)(8).  "Release [therefore] reflects a

21  determination by the government that the noncitizen is not a danger to the community or a flight

22  risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia*

23  *for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

24          Following her release, petitioner went to live with her family, including her mother, in San

25  Jose, California.  Doc. 1 at ¶ 58.  She also found a partner in San Jose, and she and her partner

26  ---

27  [1] Petitioner's verified petition establishes the facts articulated in this section.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit."  *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98

28  (9th Cir. 1987)).

1  aspired to build a family together.  *Id.*

2      The verified petition indicates that petitioner has no criminal record and has reported to

3  immigration officials as requested.  *Id.* ¶¶ 3, 10, 59–60, 63.  Specifically, she appeared at ICE's

4  San Francisco Field Office for all required in-person check-ins.  *Id.* ¶¶ 3, 10, 59–60, 63.  She also

5  attended multiple hearings in her removal proceedings at the San Francisco Immigration Court.

6  *Id.* ¶ 60.  Petitioner's next hearing is scheduled for October 22, 2025, at the San Francisco

7  Immigration Court.  *Id.* ¶ 64.

8      When petitioner appeared at a routine check-in on July 23, 2025, ICE agents arrested her.

9  *Id.* ¶ 60.  While making the arrest, ICE agents took petitioner's folder of documents related to her

10  removal proceedings and, as of the filing of the petition, had not returned those documents to her.

11  *Id.*  ICE agents then transferred petitioner to the Mesa Verde Detention Facility, which is in

12  Bakersfield, California.  *Id.* ¶ 61.

13      Upon arrival at Mesa Verde, medical staff took a urine sample from her.  *Id.* ¶ 66.  Mesa

14  Verde staff did not inform petitioner that her urine sample showed anything out of the ordinary.

15  *Id.*  A few weeks later, however, petitioner began to feel pain in her stomach and pelvic region,

16  and she requested medical attention.  *Id.* ¶ 67.  Mesa Verde staff took a urine sample and

17  informed petitioner that she was pregnant.  *Id.*

18      Petitioner's verified petition states that, after discovering that she was pregnant, petitioner

19  was not provided with adequate food, medical care, or pre-natal educational materials.  *Id.* ¶ 69.

20  Mesa Verde provides detainees with meals at its cafeteria, but the meals are limited in calories

21  and quality.  *Id.*  Petitioner was often unable to stomach the meals due to its appearance and

22  smell.  *Id.*  When she was able to eat the meals that were provided, the portions were not big

23  enough.  *Id.*  The only other way to obtain food at Mesa Verde was through commissary, and

24  those food options were highly processed items such as ramen noodles, chips, and candy.  *Id.*

25  Petitioner also lacked access to medical advice and to pre-natal educational materials that would

26  have enabled her to understand whether the foods she was eating were sufficient for a pregnant

27  woman and whether the things she was feeling during her pregnancy were normal.  *Id.* ¶ 70.

28      These conditions at Mesa Verde, combined with the separation from her family and

concern about her pregnancy, caused petitioner to enter a state of distress. *Id.* ¶¶ 68–72. On August 31, 2025, petitioner began to pass quantities of brown fluid that alarmed her. *Id.* ¶ 73. She alerted medical staff and was taken to an off-site hospital, where the doctor informed petitioner and the Mesa Verde guards that petitioner's fetus was okay but that she should return in 48 hours for follow up tests. *Id.* The next day, petitioner awoke to large amounts of brown fluid excreting from her body. *Id.* ¶ 74. She alerted Mesa Verde staff, and they returned her to the hospital. *Id.* The hospital staff informed petitioner that they were concerned that her pregnancy was compromised but that they could not be sure. *Id.* The next morning, on September 2, 2025, petitioner awoke to more blood and brown fluid, and the medical staff then confirmed that petitioner had suffered a miscarriage. *Id.* ¶ 75.

On September 2, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 4.

## II.    Legal Standard

The standards for issuing a temporary restraining order and a preliminary injunction are "substantially identical." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the*

1    *Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations

2    omitted).

3        **III.    Discussion**

4            The Court finds that the requirements for issuing a temporary restraining order without

5    notice are met.  *See* Fed. R. Civ. P. 65(b).  Petitioner notified respondents' counsel on August 29,

6    2025 that she would be filing the motion, then notified them again on September 2, 2025 that the

7    motion would be filed that day.  *See* Doc. 4-1 at ¶¶ 4–5, 7.  While respondents have not appeared

8    or filed a response, petitioner has set out specific facts demonstrating that immediate and

9    irreparable injury, loss, or damage may result before respondents can be heard in opposition.  *See*

10    *Pinchi v. Noem*, No. 25-cv-05632-RML, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025)

11    (granting ex parte temporary restraining order in similar circumstances).

12        **a.  Petitioner is Likely to Succeed on the Merits.**

13            Petitioner argues that the Due Process Clause bars the government from re-detaining her

14    without first providing a bond hearing.  Doc. 4 at 5–11.  "Courts analyze [] due process claims in

15    two steps: the first asks whether there exists a protected liberty interest under the Due Process

16    Clause, and the second examines the procedures necessary to ensure any deprivation of that

17    protected liberty interest accords with the Constitution."  *Garcia v. Andrews*, No. 2:25-cv-01884-

18    TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of*

19    *Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).  These two steps are examined in turn.

20        **1.  Petitioner Possesses a Protected Liberty Interest.**

21            A protected liberty interest may arise from a conditional release from physical restraint.

22    *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  Even when a statute allows the government to

23    arrest and detain an individual, a protected liberty interest under the Due Process Clause may

24    entitle the individual to procedural protections not found in the statute.  *See id.* (Due Process

25    requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S.

26    778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)

27    (same, in parole context).  To determine whether a specific conditional release rises to the level of

28    a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific

5

1    conditional release in the case before them with the liberty interest in parole as characterized by

2    *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation

3    marks and citation omitted).

4    In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide

5    range of things open to persons" who have never been in custody or convicted of any crime,

6    including to live at home, work, and "be with family and friends and to form the other enduring

7    attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly

8    subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring

9    and seeking authorization to work and travel, her "condition is very different from that of

10   confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole

11   will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of

12   parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore,

13   a parolee possesses a protected liberty interest in her "continued liberty." *Id.* at 481–84.

14   Petitioner's release is similar. It allowed her to live with her mother in San Jose and to

15   meet her partner, with whom she tried to start her own family—undoubtedly one of the most

16   "enduring attachments of normal life." *Id.* at 482. DHS's release of petitioner in 2022 reflected a

17   determination that she did not pose a flight risk or danger to the community. *See Saravia*, 280 F.

18   Supp. 3d at 1176; 8 C.F.R. § 1236.1(c)(8). Petitioner indicates that she has no criminal record,

19   and that, following her release in 2024, she complied with her release terms and appeared at all

20   immigration proceedings and check-ins as required. The government then rearrested petitioner

21   without showing any changed circumstances, contradicting the "implicit promise that [petitioner's

22   freedom] will be revoked only if [she] fails to live up to the [release] conditions." *Morrissey*, 408

23   U.S. at 482.

24   The Court finds that petitioner has a protected liberty interest in her release. *See*

25   *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17,

26   2025) (recognizing that "the liberty interest that arises upon release [from immigration detention]

27   is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL

28   1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have

been released have a strong liberty interest).  The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  Petitioner had been out of custody for over two-and-a-half years, and during that time, began a life in San Jose, living with her mother and beginning a family with her new partner.  Her detention denies her that freedom, and it has had grievous consequences.  After discovering that she was pregnant, she was isolated from her family in a detention center hundreds of miles away.  Petitioner states that "if she were free, she would [have been] joyfully reading about pregnancy care and calling loved ones to ask about their experiences and advice," and would have been able to better understand her health needs and her developing embryo's needs.  Doc. 1 at ¶ 70.  She had no one at Mesa Verde to provide similar support.  *Id.*

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing."  *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).  Civil

1   immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a

2   noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690;

3   *Padilla*, 704 F. Supp. 3d at 1172.  Petitioner has no criminal history and indicates she has

4   attended every court hearing and check-in since she arrived in the United States.  Doc. 1 at ¶¶ 3,

5   10, 59–60, 63.  In fact, petitioner indicates she was arrested while appearing at a check-in with

6   ICE agents.  Given the absence of any procedural safeguards to determine if her detention was

7   justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."

8   *A.E.*, 2025 WL 1424382, at *5.

9       Third, the government's interest in detaining petitioner without a hearing is "low."

10  *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 2025 WL 691664, at *6.  In

11  immigration court, custody hearings are routine and impose a "minimal" cost.  *Doe*, 2025 WL

12  691664, at *6.  The government's interest is further diminished where a person "has consistently

13  appeared for her immigration hearings . . . and [] does not have a criminal record," *Pinchi*, 2025

14  WL 1853763, at *2.

15      On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which

16  should have been provided before petitioner was detained.  "'[T]he root requirement' of the Due

17  Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived

18  of any significant protected interest.'"  *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542

19  (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127

20  ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some

21  kind of a hearing *before* the State deprives a person of liberty . . . .").  The Supreme Court has

22  held that Due Process requires a pre-deprivation hearing before those released on parole from a

23  criminal conviction can have their bond finally revoked.  *See Morrissey*, 408 U.S. at 480–86.  The

24  same is true for those subject to revocation of probation.  *Gagnon v. Scarpelli*, 411 U.S. at 782.

25      Given the absence of "evidence of urgent concerns," the Court concludes that "a pre-

26  deprivation hearing [was] required to satisfy due process."  *Guillermo M. R.*, 2025 WL 1983677,

27  at *9.  Numerous district courts have reached a similar conclusion.  *See, e.g.*, *id.*; *Garcia*, 2025

28  WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Singh*,

1    2025 WL 1918679, at *8–9; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071,

2    2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH,

3    2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH,

4    2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

5        With these considerations in mind, petitioner is likely to succeed on the merits.

6        **b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

7        Turning to the second *Winters* factor, petitioner's detention has caused and will continue

8    to cause irreparable harm. Petitioner suffered a miscarriage while detained by ICE in a detention

9    center. She is unable to be with her family and friends who would help her through that

10   significant loss. Those harms are irreparable. Moreover, "[i]t is well established that the

11   deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*,

12   872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an

13   alleged deprivation of a constitutional right is involved, most courts hold that no further showing

14   of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir.

15   2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

16   As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual"

17   because "it often means loss of a job" and "disrupts family life." *Barker v. Wingo*, 407 U.S. 514,

18   532–33 (1972). Thus, petitioner faces irreparable harm absent a temporary restraining order.

19       **c. Balance of Equities and Public Interest**

20       When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird*

21   *v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Faced with a choice

22   "between [minimally costly procedures] and preventable human suffering," as discussed above,

23   the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor."

24   *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

25       The public interest also weighs in petitioner's favor. "The public has a strong interest in

26   upholding procedural protections against unlawful detention, and the Ninth Circuit has

27   recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL

28   1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3)

1    (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,

2    838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's

3    constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

4         In conclusion, the Court finds that the requirements for issuing a temporary restraining

5    order are met.  Petitioner's immediate release is required to return her to the status quo ante—"the

6    last uncontested status which preceded the pending controversy."  *Pinchi*, 2025 WL 1853763, at

7    *3; *Kuzmenko v. Phillips*, No. 2:25-cv-00663-DJC-AC, 2025 WL 779743, at *2 (E.D. Cal. Mar.

8    10, 2025); *see also Valdez v. Joyce*, 25 Civ. 4627, 2025 WL 1707737, at *5 (S.D.N.Y. June 18,

9    2025) (ordering immediate release of unlawfully detained noncitizen); *Ercelik v. Hyde*, No. 1:25-

10   CV-11007-AK, 2025 WL 1361543, at *15–16 (D. Mass. May 8, 2025) (same); *Günaydın v.*

11   *Trump*, No. 25-CV-01151, 2025 WL 1459154, at *10–11 (D. Minn. May 21, 2025) (same).

12   Respondents are ordered to release petitioner immediately without electronic monitoring.

13   Respondents may not re-detain petitioner unless the government proves by clear and convincing

14   evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger

15   to the community.

16         The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts

17   regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir.

18   2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4; *Singh*, 2025 WL

19   1918679, at *9.

20   **IV.    Conclusion and Order**

21         Accordingly, petitioner's motion for temporary restraining order, Doc. 4, is GRANTED.

22   Respondents are ORDERED to immediately release petitioner on her own recognizance without

23   electronic monitoring.

24         Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner without at

25   least ten days' notice and unless they demonstrate, by clear and convincing evidence at a pre-

26   deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger

27   to the community such that her physical custody is legally justified.

28         Respondents may move for modification or dissolution of this Order on two (2) days'

notice.  *See* Fed. Rule Civ. P. 65(b); Local Rule 231(c)(8).

Respondents are ORDERED TO SHOW CAUSE before this Court why a preliminary injunction should not issue pending a final disposition of this matter.  The hearing on the order to show cause will be held on September 18, 2025, at 1:30 p.m. in Courtroom 6 before District Judge Kirk E. Sherriff.  Respondents shall file any response to petitioner's motion by September 11, 2025.  Petitioner may file a reply by September 16, 2025.  The parties may stipulate to extend the briefing schedule and hearing date, provided that this temporary restraining order remain in effect pending any such continuance.

IT IS SO ORDERED.

    Dated:    September 4, 2025

_____
UNITED STATES DISTRICT JUDGE

11