UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGIE LORENA RODRIGUEZ RODRIGUEZ,<br><br>Petitioner,<br><br>v.<br><br>POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; MINGA WOFFORD, Mesa Verde ICE Processing Center Facility Administrator,<br><br>Respondents. | No. 1:25-cv-01111-KES-SAB (HC)<br><br>ORDER GRANTING PRELIMINARY INJUNCTION<br><br>Docs. 4, 6, 10 |

Petitioner Angie Loren Rodriguez Rodriguez is an asylum-seeker who, after being briefly detained upon entering the United States, was released by immigration authorities in 2022 after they determined she was not a flight risk or a danger to the community. Immigration and Customs Enforcement ("ICE") agents re-detained petitioner on July 23, 2025, when she reported for a scheduled check-in, although the government has not identified any changed circumstances as to petitioner. Several weeks after ICE agents detained her in July 2025, petitioner began to feel ill; further testing revealed that she was pregnant. Petitioner's verified petition asserts that she was not provided with adequate food, medical care, or pre-natal educational materials while detained. On the date she initiated this action, she suffered a miscarriage.

1

On September 2, 2025, petitioner filed a petition for writ of habeas corpus, Doc. 1, and a motion for temporary restraining order, Doc. 2. On September 4, 2025, the Court granted petitioner's motion for temporary restraining order, ordered respondents to release her from custody, and ordered respondents to show cause why a preliminary injunction should not issue. Doc. 6. On September 17, 2025, the government filed a response to the order to show cause, Doc. 10, and on September 25, 2025, petitioner filed a reply, Doc. 11. The Court held a hearing on October 6, 2025. Doc. 13. For the reasons set forth below, the Court grants petitioner's motion for a preliminary injunction.

I.      **Background**[1]

Petitioner states that she fled Colombia after facing violent persecution and arrived in the United States on December 27, 2022, seeking asylum. Doc. 1 at ¶¶ 2, 10, 56. She turned herself in to immigration officials near the southern border, and immigration officials detained her. *Id.* ¶ 56; Doc. 10-1, Alarcon Decl. at ¶ 4. The next day, immigration officials served her with a notice to appear in immigration court for removal proceedings and released her on her own recognizance pending such proceedings. Doc. 1 at ¶ 57; Doc. 10-1, Alarcon Decl. at ¶ 5. The regulations that authorize immigration authorities to release a noncitizen require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Following her release, petitioner went to live with her family, including her mother, in San Jose, California. Doc. 1 at ¶ 58. She also found a partner in San Jose, and she and her partner aspired to build a family together. *Id.* The government does not dispute petitioner's assertions

---

[1] Petitioner's verified petition establishes many of the facts articulated in this section. A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)).

that she has no criminal record and has reported to immigration officials as requested. *See id.* ¶¶ 3, 10, 59–60, 63; Doc. 10.  Specifically, petitioner asserts that she appeared at ICE's San Francisco Field Office for all required in-person check-ins. *Id.* ¶¶ 3, 10, 59–60, 63.  She also attended multiple hearings in her removal proceedings at the San Francisco Immigration Court. *Id.* ¶ 60.  Petitioner's next hearing is scheduled for October 22, 2025, at the San Francisco Immigration Court. *Id.* ¶ 64.

When petitioner appeared at a routine check-in on July 23, 2025, ICE agents arrested her. *Id.* ¶ 60; Doc. 10-1, Alarcon Decl. at ¶¶ 6–7.  While making the arrest, ICE agents took petitioner's folder of documents related to her removal proceedings and, as of the filing of the petition, had not returned those documents to her.  Doc. 1 at ¶ 60.  ICE agents then transferred petitioner to the Mesa Verde Detention Facility, which is in Bakersfield, California. *Id.* ¶ 61.

Upon arrival at Mesa Verde, medical staff took a urine sample from her. *Id.* ¶ 66.  Mesa Verde staff did not inform petitioner that her urine sample showed anything out of the ordinary. *Id.*  A few weeks later, however, petitioner began to feel pain in her stomach and pelvic region, and she requested medical attention. *Id.* ¶ 67.  Mesa Verde staff took a urine sample and informed petitioner that she was pregnant. *Id.*

Petitioner's verified petition states that, after discovering that she was pregnant, petitioner was not provided with adequate food, medical care, or pre-natal educational materials. *Id.* ¶ 69.  Mesa Verde provides detainees with meals at its cafeteria, but the meals are limited in calories and quality. *Id.*  Petitioner was often unable to stomach the meals due to their appearance and smell. *Id.*  When she was able to eat the meals that were provided, the portions were not big enough. *Id.*  The only other food options were commissary items such as ramen noodles, chips, and candy. *Id.*  Petitioner also lacked access to medical advice and to pre-natal educational materials that would have enabled her to understand whether the foods she was eating were sufficient for a pregnant woman and whether the things she was feeling during her pregnancy were normal. *Id.* ¶ 70.

These conditions at Mesa Verde, combined with the separation from her family and concern about her pregnancy, caused petitioner to enter a state of distress. *Id.* ¶¶ 68–72.  On

1    August 31, 2025, petitioner began to pass quantities of brown fluid that alarmed her. *Id.* ¶ 73.
2    She alerted medical staff and was taken to an off-site hospital, where the doctor informed
3    petitioner and the Mesa Verde guards that petitioner's fetus was okay but that she should return in
4    48 hours for follow up tests. *Id.* The next day, petitioner awoke to large amounts of brown fluid
5    excreting from her body. *Id.* ¶ 74. She alerted Mesa Verde staff, and they returned her to the
6    hospital. *Id.* The hospital staff informed petitioner that they were concerned that her pregnancy
7    was compromised but that they could not be sure. *Id.* The next morning, on September 2, 2025,
8    petitioner awoke to more blood and brown fluid, and the medical staff then confirmed that she
9    had suffered a miscarriage. *Id.* ¶ 75.

10   Petitioner was released from custody pursuant to the Court's order on September 4, 2025.
11   Doc. 10-1 at ¶ 11. After seeking an extension of time, the government filed a response on
12   September 17, 2025 to the Court's order to show cause why a preliminary injunction should not
13   issue. Doc. 10. In its response, the government largely does not dispute the facts set out in
14   petitioner's verified petition. *See* Doc. 10.

15   **II.     Jurisdiction**

16   As a preliminary matter, the Court must address its jurisdiction to consider petitioner's
17   requested relief. 28 U.S.C. § 2241 provides the Court with jurisdiction over petitions for writs of
18   habeas corpus, and the Court may issue a writ of habeas corpus to any person within this District
19   who is "in custody in violation of the Constitution . . . ." 28 U.S.C. § 2241(a), (c). The
20   government argues that, notwithstanding section 2241, two provisions of the Immigration and
21   Nationality Act strip the Court of jurisdiction to decide this case: 8 U.S.C. §§ 1252(b)(9) and
22   1252(g). Doc. 10 at 5–9.

23   Section 1252(b)(9) bars district court review of claims "arising from any action taken or
24   proceeding brought to remove an alien." 8 U.S.C. § 1252(b)(9). The government argues that
25   petitioner's claim "aris[es] from" an "action" taken to remove her—the government's arrest and
26   detention of her pending removal proceedings. Doc. 10 at 6–7. This argument is unpersuasive.
27   "As a threshold matter, the very text of § 1252(b) sets out requirements only '[w]ith respect to
28   review of an order of removal . . . ." *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025); *see* 8

U.S.C. § 1252(b) ("With respect to review of an order of removal under subsection (a)(1), the following requirements apply . . . ."). There is no order of removal at issue here, so section 1252(b) does not apply, regardless of whether petitioner's claim could be framed as one that "aris[es] from" an "action" taken to remove her under section 1252(b)(9).

Moreover, petitioner's claim does not "aris[e] from" an "action" taken to remove her for purposes of section 1252(b)(9), as that statute has been interpreted by the Supreme Court. The Supreme Court has noted that section 1252(b)(9) "does not present a jurisdictional bar where those bringing suit are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020) (internal quotation marks and citations omitted). Section 1252(b)(9) "is certainly not a bar where, as here, the parties are not challenging any removal proceedings." *Id.*

The government relies on *Jennings v. Rodriguez*, 583 U.S. 281 (2018), in urging a different conclusion, but points to a section of the *Jennings* decision that was not joined by the majority of the Court. *See* Doc. 10 at 8–9. The discussion of § 1252(b)(9) in *Jennings* was by a plurality, not the full Court. *See Jennings*, 583 U.S. at 292–95 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J., as to Part II) *Ozturk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025) (citing *Jennings*, 583 U.S. at 292–95).[2] Moreover, the *Jennings* plurality's discussion of section

---

[2] The section of the *Jennings* decision cited by respondents states that "it is enough to note that [the detainees] are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Jennings*, 583 U.S. at 294–95 (opinion of Alito, J., joined by Roberts, C.J., and Kennedy, J., as to Part II). The government argues that this Court lacks jurisdiction under section 2241 because petitioner is challenging "the decision to detain her in the first place." Doc. 10 at 8. This argument fails. First, petitioner is not challenging the decision "to detain her in the first place." Petitioner was first detained in 2022, briefly, when she entered the country. She was then promptly released and remained released for several years before ICE agents re-detained her. Petitioner does not challenge her brief, initial detention; she challenges her re-detention without a bond hearing under the Due Process Clause. Second, the *Jennings* plurality's passing reference to a "decision to detain them in the first place" is not part of the decision of the Court. A majority of the Court subsequently quoted that section of *Jennings* but specifically omitted the plurality's reference to "the decision to detain them in the first place," noting: "As we have said before, § 1252(b)(9) 'does not present a jurisdictional bar' where those bringing suit 'are not asking for review of an

1252(b)(9) does not support the government's position. *Jennings* involved a habeas challenge to prolonged detention under several provisions of the federal immigration laws. *See Jennings*, 583 U.S. at 291–95. The plurality "assume[d] for the sake of argument that the actions taken with respect to all the aliens in the certified class constitute 'action[s] taken . . . to remove [them] from the United States[,]'" so the focal point was whether the "'questions of law'" presented "'aris[e] from' the actions taken to remove these aliens." *Id.* at 292–93. The plurality observed that a capacious reading of the phrase "arising from" would lead to "staggering results" and "make claims of prolonged detention effectively unreviewable" because, "[b]y the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place." *Id.* at 293. The plurality recognized that the phrase "arising from" should not be read with "'uncritical literalism', leading to results that 'no sensible person could have intended.'" *Id.* at 293–94 (quoting *Gobeille v. Liberty Mut. Ins. Co.,* 577 U.S. 312, 319 (2016)). The plurality also found that section 1252(b)(9) did not bar a habeas action challenging a noncitizen's continued detention. *Id.* at 294–95. And after *Jennings*, in *Department of Homeland Security v. Regents of the University of California* a majority of the Court reiterated that section 1252(b)(9) is "certainly not a bar where . . . the parties are not challenging any removal proceedings." 591 U.S. at 19.

As other courts have found in similar contexts, section 1252(b)(9) does not present a bar where a petitioner is challenging her detention without a bond hearing. *See, e.g.*, *Garcia v. Noem*, No. 25-CV-02180-DMS-MMP, 2025 WL 2549431, at *3 (S.D. Cal. Sept. 3, 2025) (holding that a challenge to detention without a bond hearing pursuant to 8 U.S.C. § 1226(a) was not barred by § 1252(b)(9)); *Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025) (same); Doc. 12, *Ceja Gonzalez v. Noem*, No. 5:25-cv-02054 (C.D. Cal. Aug. 13, 2025); *Vasquez Perdomo v. Noem*, No. 2:25-CV-05605-MEMF-SP, 2025 WL 1915964, at *17 (C.D. Cal. July 11, 2025) (Fourth Amendment challenge to arrest and detention not

---

order of removal,' 'the decision ... to seek removal,' or 'the process by which ... removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. at 19 (quoting *Jennings*, 583 U.S. at 294–95).

1   barred); *United Farm Workers v. Noem*, No. 1:25-CV-00246 JLT CDB, 2025 WL 1235525, at
2   *16–20 (E.D. Cal. Apr. 29, 2025) (same).

3       The next provision cited by the government, section 1252(g), provides that "no court shall
4   have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision
5   or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal
6   orders . . . ." 8 U.S.C. § 1252(g). The Supreme Court has interpreted Section 1252(g) narrowly,
7   limiting it to "three discrete actions": the "'decision or action' to '*commence* proceedings,
8   *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*,
9   525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)) (emphasis in original). "It is implausible
10  that the mention of [these] three discrete events along the road to deportation was a shorthand
11  way of referring to all claims arising from deportation proceedings." *Id.*

12      The government argues that petitioner's claim "aris[es] from the decision" to "commence
13  proceedings." Doc. 10 at 6. This argument is unpersuasive for the same reasons discussed
14  above—the "arising from" language must be read narrowly. *See Mosqueda*, 2025 WL 2591530,
15  at *4 (reaching the same conclusion). The Ninth Circuit has also rejected the proposition that
16  section 1252(g) bars habeas challenges to immigration detention. *See Bello-Reyes v. Gaynor*, 985
17  F.3d 696, 698, 700 n.4 (9th Cir. 2021). Petitioner's "claim[] challenge[s] the Government's
18  failure to follow Due Process . . . during [her] re-detention." *Phetsadakone v. Scott*, No. 2:25-
19  CV-01678-JNW, 2025 WL 2579569, at *2 (W.D. Wash. Sept. 5, 2025). Such a claim falls
20  outside "section 1252(g)'s narrow jurisdictional bar and present[s] constitutional and procedural
21  due process challenges rather than direct challenges to removal execution." *Id.*; *see Garcia v.
22  Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *1 n.1 (E.D. Cal. July 14, 2025)
23  (same); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2675785, at *9 (E.D. Cal.
24  Sept. 18, 2025) (same).

25      As the Court has jurisdiction, this Order next addresses whether a preliminary injunction
26  should issue.

27  ///
28  ///

7

### III. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

### IV. Discussion

#### a. Petitioner is Likely to Succeed on the Merits.

Because civil immigration detention is typically justified only when a noncitizen presents a risk of flight or danger to the community, *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), petitioner argues that the Due Process Clause bars the government from re-detaining her without first providing a hearing where it must prove she is a flight risk or danger. Doc. 4 at 5–11. The government's response to this argument is that 8 U.S.C. § 1225(b)(2)(A) applies to petitioner and mandates that she be detained. *See* Doc. 10 at 9–12. But petitioner raises a Due Process claim, so the question here is what the Constitution requires, not § 1225(b)'s statutory requirements.[3]

---

[3] The government's new position that section 1225(b)(2) applies to petitioner is also inconsistent with immigration authorities' release of petitioner on her own recognizance in 2022 after their determination that she was not a flight risk or a danger, and with the fact that petitioner was in immigration court proceedings when ICE elected to re-detain her without any changed circumstances. This Court has previously rejected the government's new interpretation of section 1225(b)(2)(A), which the government now maintains applies to all noncitizens present in the

8

Turning to petitioner's due process challenge to her re-detention without a bond hearing, the Court analyzes the claim in "two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). These two steps are examined in turn.

### 1. Petitioner Possesses a Protected Liberty Interest.

A protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See id.* (Due Process requires pre-deprivation hearing before revocation of preparole); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, her "condition is very different from that of

---

United States who entered without legal authorization, regardless of the length of their presence in the country. *See Guerrero Lepe v. Andrews*, No. 1:25-cv-01163-KES-SKO (HC), 2025 WL 2716910, at *1 (E.D. Cal. Sept. 23, 2025).

9

1 confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, a parolee possesses a protected interest in her "continued liberty." *Id.* at 481–84.

Petitioner's release from detention in 2022 is similar. It allowed her to live with her mother in San Jose and to meet her partner, with whom she began to start her own family—undoubtedly one of the most "enduring attachments of normal life." *Id.* at 482. The government's release of petitioner in 2022 reflected a determination that she did not pose a flight risk or danger to the community. *See Saravia*, 280 F. Supp. 3d at 1176; 8 C.F.R. § 1236.1(c)(8). The government does not challenge petitioner's evidence that she has no criminal record, and that, following her release in 2022, she complied with her release terms and appeared at all immigration proceedings and check-ins as required. The government then rearrested petitioner without showing any changed circumstances, contradicting the "implicit promise that [petitioner's freedom] will be revoked only if [she] fails to live up to the [release] conditions." *Morrissey*, 408 U.S. at 482.

The Court finds that petitioner has a protected liberty interest in her release. *See Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-05259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest). The Court must therefore determine what process is due before the government may terminate her liberty.

### 2. A Pre-Deprivation Bond Hearing Is Required.

Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). The procedural protections required in a given situation are evaluated using the *Mathews v. Eldridge* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through

10

>the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *see Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner had been out of custody for over two-and-a-half years, and during that time, began a life in San Jose, living with her mother and beginning a family with her new partner. Her detention denies her that freedom, and it has had grievous consequences. After discovering that she was pregnant, she was isolated from her family in a detention center nearly three-hundred miles away. Petitioner states that "if she were free, she would [have been] joyfully reading about pregnancy care and calling loved ones to ask about their experiences and advice," and would have been able to better understand her health needs and her developing embryo's needs. Doc. 1 at ¶ 70. In detention, she had no such opportunity or support. *Id.*

Second, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is justified when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690; *Padilla*, 704 F. Supp. 3d at 1172. Petitioner has no criminal history and the government does not dispute her assertion that she attended every court hearing and check-in since she arrived in the United States. Doc. 1 at ¶¶ 3, 10, 59–60, 63. In fact, petitioner was arrested while appearing at a check-in with ICE. Given the absence of any procedural safeguards to determine if her detention was justified, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5.

11

1     Third, the government's interest in detaining petitioner without a hearing is "low." *Ortega*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *Doe*, 2025 WL 691664, at *6. In immigration court, custody hearings are routine and impose a "minimal" cost. *Doe*, 2025 WL 691664, at *6. The government's interest is further diminished where a person "has consistently appeared for her immigration hearings . . . and [] does not have a criminal record," *Pinchi*, 2025 WL 1853763, at *2.

    On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before petitioner was detained. "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* [she] is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . ."). The Supreme Court has held that Due Process requires a pre-deprivation hearing before those released on parole from a criminal conviction can have their bond finally revoked. *See Morrissey*, 408 U.S. at 480–86. The same is true for those subject to revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. at 782.

    Given the absence of "evidence of urgent concerns," the Court concludes that "a *pre-deprivation* hearing [was] required to satisfy due process." *Guillermo M. R.*, 2025 WL 1983677, at *9. Numerous district courts have reached a similar conclusion. *See, e.g.*, *id.*; *Garcia*, 2025 WL 1927596, at *5; *Pinchi*, 2025 WL 1853763, at *3–4; *Ortega*, 415 F. Supp. 3d at 970; *Singh*, 2025 WL 1918679, at *8–9; *Doe*, 2025 WL 691664, at *6; *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

    With these considerations in mind, petitioner is likely to succeed on the merits.

///

///

### b. Petitioner Will Face Irreparable Harm Without Injunctive Relief.

Turning to the second *Winters* factor, petitioner's detention has caused and will continue to cause irreparable harm. Petitioner suffered a miscarriage while detained by ICE in a detention center. She was unable to be with her family and friends, who would have helped her through her pregnancy and during the medical complications that resulted in a miscarriage while she was in custody. Those harms are irreparable. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). As petitioner was likely detained in violation of her due process rights, she faces irreparable harm absent a preliminary injunction.

### c. Balance of Equities and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). The government argues that it has a strong interest in enforcing the immigration laws, but "the government has no legitimate interest in detaining individuals who [it previously] determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Faced with a choice "between [minimally costly procedures] and preventable human suffering," as discussed above, the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Id.* at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021); *see also Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817,

838 (9th Cir. 2020) ("It is always in the public interest to prevent the violation of a party's constitutional rights.") (citing *Padilla*, 953 F.3d at 1147–48).

In conclusion, the Court finds that a preliminary injunction is warranted. Respondents may not re-detain petitioner unless the government proves by clear and convincing evidence at a bond hearing before a neutral decisionmaker that petitioner is a flight risk or danger to the community.

The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Garcia*, 2025 WL 1676855, at *3; *Pinchi*, 2025 WL 1853763, at *4; *Singh*, 2025 WL 1918679, at *9.

## V.     Conclusion and Order

Accordingly, petitioner's motion for a preliminary injunction, Doc. 4, is GRANTED. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner without at least ten days' notice and unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

IT IS SO ORDERED.

Dated:   October 7, 2025

UNITED STATES DISTRICT JUDGE